IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KENNETH BURKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 15-cv-00055 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| LT. SARA SOTO, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kenneth Burks alleges that he was denied appropriate medical treatment while incarcerated at Cook County Jail and two different Illinois Department of Corrections ("IDOC") facilities. He asserts a claim for the violation of his constitutional rights under 42 U.S.C. § 1983 and a state common law claim for intentional infliction of emotional distress against an officer at the jail, the doctors who made allegedly improper decisions regarding his treatment, and the company contracted to provide health care services to inmates at IDOC prisons. Now before the Court are two motions to dismiss: (i) the jail officer's motion to dismiss the intentional infliction of emotional distress claim against her, and (ii) the motion by the doctors and the correctional health care services company to dismiss the intentional infliction claims against them and the § 1983 claim against the company. For the reasons detailed below, the officer's motion (Dkt. No. 50) is granted and the motion by the doctors and the company (Dkt. No. 35) is denied.

## BACKGROUND

The following account of the facts underlying this action is taken from Burks's Second Amended Complaint and accepted as true for purposes of Defendants' motions to dismiss. *Thulin v. Shopko Stores Operating Co., LLC,* 771 F.3d 994, 997 (7th Cir. 2014).

On July 17, 2014, while he was a Cook County Jail inmate, Burks fell and injured his left hand. (Sec. Am. Compl. ¶ 14, Dkt. No. 98.) He asked Defendant Lt. Sara Soto, who had a supervisory position at the jail, to send him to Cermak Health Services of Cook County for a diagnostic X-ray and any necessary treatment. (*Id.* ¶¶ 3, 14.) Soto evaluated the injury herself, denied his request to be sent to Cermak immediately, and instead directed him to submit a form requesting medical treatment. (*Id.* ¶ 15.)

Burks was treated at Cermak on July 19, 2014. (*Id.* ¶ 16.) His left hand was X-rayed and a doctor diagnosed his injury as a contusion. (*Id.*) On July 21, 2014, a second Cermak review of Burks's X-ray indicated that he had a fractured bone in his left hand. (*Id.* ¶ 17.) Burks's hand did not improve and, on July 25 and July 26, 2014, he submitted forms requesting further medical treatment at Cermak. (*Id.* ¶ 19.) His hand was placed in a cast on July 29, 2014. (*Id.* ¶ 18.)

On September 29, 2014, Burks received follow-up treatment from an orthopedic specialist at Stroger Hospital. (*Id.* ¶ 20.) The examining doctor determined that the fracture in Burks's hand had not healed properly and scheduled surgery for him. (*Id.* ¶ 21.) On November 5, 2014, Burks was transferred from Cook County Jail to IDOC's Stateville Correctional Center. (*Id.* ¶ 22.) Defendant Wexford Health Services Incorporated ("Wexford") is contracted to provide medical services for IDOC inmates. (*Id.* ¶ 9.) Burks told a Stateville doctor, Defendant Raj Khuranah, that he was scheduled for orthopedic surgery. (*Id.* ¶ 23.) Khuranah saw Burks's fractured bone in a review of an X-ray. (*Id.*) However, Khuranah "did not follow through with

the referral and allow Mr. Burks to have surgery." (*Id.*) As a result, Burks missed his scheduled November 9, 2014 surgery appointment. (*Id.*)

Burks was transferred to Western Illinois Correctional Center, another IDOC facility, on December 18, 2014. (*Id.* ¶ 24.) On January 2, 2015, he told a doctor at Western, Defendant Thomas Baker, that he had missed his scheduled November 9 surgery. (*Id.*¶ 25.) Baker saw that the range of motion in Burks's left wrist was half of the normal extent. (*Id.*) He ordered an X-ray and requested Burks's medical records from his Cook County incarceration. (*Id.*)

Baker examined Burks's X-ray on January 12, 2015 and saw both an old fracture of a bone in Burks's left hand and a possible second fracture in his left wrist. (*Id.* ¶ 26.) On February 4, 2015, Baker planned to refer Burks to an orthopedic specialist. (*Id.* ¶ 27.) On February 16, 2015, Baker participated in a collegial review with Defendant Steve Ritz, a doctor who served as Wexford's "Corporate Medical Director of Utilization Management." (*Id.* ¶ 28.) Pursuant to Wexford's policies and practices, Ritz denied a referral for surgery and instead requested records from Burks's evaluation at Stroger Hospital. (*Id.*) Ritz was aware that Burks's fractures were "painful, debilitating, and unhealed." (*Id.*) Baker reviewed Burks's records on April 6 and May 4, 2015 and saw Burks on July 9, 2015, but each time declined to refer Burks for surgery until records from Stroger Hospital were received. (*Id.* ¶¶ 29, 30.) As of the filing of Burks's Second Amended Complaint in August 2016, he had still not received surgery. (*Id.* ¶ 31.) As the result of his delayed treatment, Burks has been forced to endure daily pain and loss of function in his left hand, plus emotional distress caused by the pain and by the fear that he may be permanently disabled. (*Id.* ¶ 38.C.)

In this action, Burks seeks relief from all Defendants under 42 U.S.C. § 1983 for violation of his Eighth Amendment Right to be free from cruel and unusual punishment in the

3

form of deliberate indifference to his serious medical needs. He also asserts claims against Defendants under Illinois state law for intentional infliction of emotional distress. Two motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) are now before the Court. In the first, Defendants Khuranah, Baker, Ritz, and Wexford (together, "Wexford Defendants") contend that the intentional infliction of emotion of distress allegations against all of them and the § 1983 allegations against Wexford fail to state claims for relief. In the second motion, Defendant Soto moves to dismiss the intentional infliction of emotional distress claim against her.[1]

## DISCUSSION

In assessing the viability of Burks's complaint for purposes of Defendants' motions to dismiss, the Court presumes his allegations to be true and construes them in the light most favorable to him. *Perez v. Fenoglio*, 792 F.3d 768, 774 (7th Cir. 2015). To survive Defendants' motions, the complaint must provide enough detail to give Defendants fair notice of what the claims are and the grounds upon which they rest, and also to show that it is plausible, rather than merely speculative, that he is entitled to relief. *Reger Dev., LLC v. Nat'l City Bank,* 592 F.3d 759, 763–64 (7th Cir.2010).

### I. Section 1983 Claim Against Wexford

Wexford contends that Burks's complaint is insufficient to state a claim for § 1983 liability against it. Specifically, the company asserts that the complaint does not give it fair

---

[1] Defendants Baker, Ritz, and Wexford together filed their initial motion to dismiss (Dkt. No. 35) in response to Burks's Amended Complaint (Dkt. No. 14) before Defendant Khuranah had been served, as did Defendant Soto (Dkt. No. 50). Burks then obtained service on Khuranah and filed the Second Amended Complaint (Dkt. No. 98), adding parties not addressed by the current motions. The parties have agreed that the earlier-filed motions may be construed to be directed to the later-filed Second Amended Complaint with Khuranah adopting the arguments made on behalf of Baker and Ritz.

4

notice of the nature of Burks's § 1983 claim and that it improperly seeks to impose *respondeat superior* liability for that claim.

Traditional *respondeat superior* principles do not apply in § 1983 actions and cannot operate to impose liability under that statute against corporations for the acts of their employees. *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014), *cert. denied,* 135 S. Ct. 1024 (2015). But corporate liability may result from a constitutional violation caused by the company's own policy or custom. *Id.* Here, Burks explicitly alleges that "because of the policies or practices of Wexford," Ritz declined to refer him for surgery in February 2015 despite knowledge of Burks's "painful, debilitating and unhealed left hand fractures." (Sec. Am. Compl. ¶ 28, Dkt. No. 98.)

The bare allegation of the existence of a Wexford policy to deny Burks treatment, without more, might be considered a merely speculative assertion. But his allegation of the existence of a policy preventing his treatment does not stand alone. As described above, after being transferred to IDOC custody, Burks informed Khuranah that he was already scheduled for surgery. (*Id.* ¶ 23.) Through an examination of Burks's X-ray, Khuranah saw for himself the fracture for which the surgery had been scheduled. (*Id.*) A second Wexford doctor, Baker, examined Burks, saw an abnormally limited range of motion in his wrist, viewed his X-ray, saw unhealed fractures, and decided to refer him to an orthopedic specialist. (*Id.* ¶¶ 25–27.) That referral was denied by Ritz, Wexford's "Corporate Medical Director of Utilization Management." (*Id.* ¶ 28.) These allegations raise an inference that a Wexford policy, rather than just professional medical judgment, caused the refusal of necessary surgery despite the fact that it was the indicated course of treatment. Refusal to follow the medically-dictated course of treatment for non-medical reasons may constitute deliberate indifference to a prisoner's medical

5

needs in violation of the Eighth Amendment. *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015). Similarly, a delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain. *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011). Burks's complaint sufficiently alleges the existence and operation of a Wexford policy that would expose the company to § 1983 liability.

Wexford argues that Burks's complaint does not identify the alleged policies with sufficient specificity to state a claim for relief. But a plaintiff's pleading burden is commensurate with the amount of information available to him, and he will not be expected to plead facts that are not accessible to him without discovery. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 528–29 (7th Cir. 2015); *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010). If a Wexford policy causes its doctors at IDOC locations to deny or delay treatment they know to be medically necessary, the details of that policy are known to the company, not to Burks. His complaint notifies Wexford that the existence of some such policy is one of the core components of his claim. The allegation that Wexford doctors were aware of a recommendation for surgery but denied that treatment nonetheless raises beyond the level of mere speculation the inference that a policy existed and that it caused Burks significant and unnecessary pain.[2] Wexford's motion to dismiss the § 1983 claim against it is accordingly denied.

## II.     Intentional Infliction of Emotional Distress Claims

Each Defendant asserts that Burks's complaint fails to state a claim for the Illinois common law tort of intentional infliction of emotional distress. The elements of an intentional

---

[2] The Court's finding that Burks has sufficiently pleaded the existence of a treatment-denial policy obviates any need for the Court to consider the evidentiary matter he offers (*see* Dkt. No. 70) to demonstrate the existence of repeated practices sufficiently widespread to be considered *de facto* policies.

infliction of emotional distress claim are: (1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress. *Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010).

Burks's complaint does not raise an inference that Defendant Soto subjected him to extreme or outrageous conduct or that she knew her actions toward him would cause emotional distress. He does not allege that she had medical expertise that informed her of the severity of his injury or that its nature was sufficiently obvious that it would have been apparent to a lay person. Burks's complaint instead raises a contrary inference: as noted above, a doctor who examined him two days later diagnosed his injury as a contusion, thus suggesting that the extent of his injury was not readily apparent even to a medical professional. (*See* Sec. Am. Compl. ¶ 16, Dkt. No. 98.) Nothing in the complaint indicates that Soto's actions could be characterized as anything other than a good faith assessment of and response to the injury she saw. The extreme and outrageous conduct required to support a claim of intentional infliction of emotional distress must be more culpable than mere negligence or recklessness. *Dunn v. City of Elgin, Ill.*, 347 F.3d 641, 651 (7th Cir. 2003). The conduct must also be accompanied by the defendant's knowledge of its probable impact on the plaintiff. *Davenport v. City of Chicago*, 653 F. Supp. 2d 885, 895 (N.D. Ill. 2009). Neither element is present as to Soto, and her motion to dismiss the intentional infliction claim against her is therefore granted.

The Wexford Defendants also contend that the intentional infliction claims against them are insufficient and must be dismissed. But, unlike Soto, Khuranah, Baker and Ritz are alleged to be medical professionals and each is alleged to have been aware of recommendations that Burks be referred to an orthopedic specialist. The complaint alleges that Burks told Khuranah that he

had been scheduled for surgery and that Khuranah saw the break himself in an X-ray. The complaint further alleges that Baker, after his own examination, recommended a referral to Ritz. Burks's complaint thus asserts that for more than a year after Khuranah saw his unhealed broken bone and was told that he had been scheduled for surgery, and for more than a year after Baker decided to refer him to a specialist, the doctors responsible for his treatment did not refer him for the recommended procedure. Evidence may prove otherwise, but Burks's complaint raises beyond the speculative level an inference of extreme conduct by the Wexford doctors and an additional inference that they were aware of the distress that would have been the likely result of their delay in facilitating the proper treatment.

The Wexford Defendants also contend that Burks's complaint fails to sufficiently allege serious emotional distress. But the severity of a defendant's conduct may itself constitute evidence of the likelihood of the plaintiff's distress. *Bristow v. Drake St. Inc.*, 41 F.3d 345, 350 (7th Cir. 1994). A plaintiff may thus establish emotional distress sufficient to support an intentional infliction claim even in the absence of medical treatment for the alleged distress or physical manifestation of its impact. *Honaker v. Smith*, 256 F.3d 477, 496 (7th Cir. 2001). Burks has alleged pain and loss of function from the delay in his treatment and emotional distress caused by the physical effects of his untreated injury and the fear of permanent disability. Those assertions and the extreme nature of the allegedly intentional and unwarranted delay in his treatment combine to form a sufficient allegation of serious emotional distress. The Court concludes that Burks's complaint states a viable claim for intentional infliction of emotional distress against the Wexford Defendants.

**CONCLUSION**

For reasons discussed above, Defendant Soto's motion to dismiss the intentional infliction of emotional distress claim against her in Count II of the Second Amended Complaint (Dkt. No. 50) is granted and the claim dismissed without prejudice. The motion to dismiss filed by Defendants Wexford, Khuranah, Baker, and Ritz (Dkt. No. 35) is denied. By November 21, 2016, Burks may seek leave to file a further amended complaint to cure the defects with regard to the allegations against Soto in Count II.

ENTERED:

Dated: November 1, 2016

_____
Andrea R. Wood
United States District Judge